UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
CHRISTOPHER L. FINAZZO,                    :        08-cv-02176 (RS)
                                           :
                            Plaintiff,     :
                                           :
            v.                             :
                                           :
SECURITIES AND EXCHANGE                    :
COMMISSION,                                :
                                           :
                            Defendant.     :
-------------------------------------------------------------x

# MEMORANDUM OF LAW
## IN OPPOSITION TO THE MOTION TO DISMISS

CARTER LEDYARD & MILBURN LLP
COUNSELORS AT LAW
2 WALL STREET
NEW YORK, N.Y. 10005

(212) 732 - 3200

## Table of Contents

**Page**

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ......................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 3

    The Tainted Investigation ........................................................................................... 5

    The Subpoena Enforcement Proceeding ..................................................................... 6

    Judge Baer's Opinion ................................................................................................. 7

ARGUMENT - THE COURT HAS SUBJECT MATTER JURISDICTION AND THE
DOCTRINE OF RES JUDICATA IS INAPPLICABLE ................................................... 9

    A.    Sovereign Immunity Does Not Bar Mr. Finazzo's claims ................................. 10

    B.    The Doctrines of Res Judicata and Collateral Estoppel are Inapplicable to the Claims
        Before This Court ............................................................................................... 14

    C.    Mr. Finazzo has Sufficiently Pled a Claim for Relief ....................................... 16

CONCLUSION ................................................................................................................... 20

## TABLE OF AUTHORITIES
### FEDERAL CASES

*AmBase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63, 72 (2d Cir. 2003) ........................................................................................................................9

*United States v. Bonnell*, 483 F. Supp. 1070 (D. Minn. 1979) ....................................12, 19

*Bowen v. Massachusetts*, 487 U.S. 879 (1988)............................................................10, 11

*Buntrock v. SEC*, No. 02 C 1274, 2003 WL. 260681 (N.D. Ill. Feb. 6, 2003) .................12

*Central Hudson Gas & Electric Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359 (2d Cir. 1995)...............................................................................................14, 15

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971) ...........................12

*Cleveland v. Caplaw Enterprises*, 448 F.3d 518 (2d Cir. 2006)........................................10

*SEC v. Forma*, 177 F.R.D. 516 (S.D.N.Y. 1987) ......................................................12, 18

*Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150 (2d Cir. 2006) ..........9

*Gordon v. New York Stock Exchange, Inc.*, 422 U.S. 659 (1975) .....................................10

*In re Grand Jury Proceeding*, No. 01-6079, 01-6222, 2003 WL. 22469714 (2d Cir. Oct. 31, 1002) ....................................................................................................12

*In re Grand Jury Subpoena to Rees*, No. M-8-85, 2006 WL. 1559286 (S.D.N.Y. June 7, 2006)....................................................................................................12

*In re Grand Jury Subpoenas Dated March 24, 2003*, 265 F. Supp. 2d 321 (S.D.N.Y. 2003) ...........................................................................................................12

*United States v. Lin Lyn Trading, Ltd.*, 925 F. Supp. 1507 (D. Utah 1996) .....................12

*United States v. Lin Lyn Trading, Ltd.*, 149 F. 3d 1112 (10th Cir 1998)...............17, 18, 19

*United States v. Longo*, 70 F. Supp. 2d 225 (W.D.N.Y. 1999)................................2, 12, 17

*Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000).....................................................9

*In re Motion to Quash Grand Jury Subpoena*, No. 06-CV-6401, 2006 WL. 2385415 (W.D.N.Y. Aug. 16, 2006).....................................................................12

*OKC Corp. v. Williams*, 614 F.2d 58 (5th Cir. 1980) ......................................................19

*United States v. Powell*, 379 U.S. 48 (1964) ..........................................................2, 6, 16

*RNR Enterprises, Inc. v. SEC*, 122 F.3d 93 (2d Cir. 1997) ..............................2, 7, 8, 12, 16

*SEC v. Beacon Hill Asset Management LLC*, No. 02 Civ. 8855, 2004 WL.
    2059702 (S.D.N.Y. Sept. 14, 2004) ...............................................................11

*SEC v. Falbo*, No. 92 CIV. 6836, 1996 WL. 193816 (S.D.N.Y. Jan. 25, 1996) ...............11

*SEC v. Herman*, No. 00 Civ. 5575, 2004 WL. 964104 (S.D.N.Y. May 5, 2004) ..............11

*SEC v. Kingsley*, 510 F. Supp. 561 (D.D.C. 1981) .................................................11

*SEC v. O'Brien*, Misc. No. 91-145, 1992 WL. 358831 (D.D.C. Aug. 26, 1992) ..............11

*SEC v. OKC Corp.*, 474 F. Supp. 1031 (N.D. Tex. 1979) ...........................................12, 19

*SEC v. R.J. Reynolds Tobacco Holdings, Inc.*, No. MISC. A. 03-1651, 2004 WL.
    3168281 (D.D.C. June 29, 2004) ...................................................................11

*SEC v. Texas International Airlines, Inc.*, 1979 WL. 184774 (D.D.C. Aug. 3,
    1979) .................................................................................................11

*SEC v. Thrasher*, No. 92 CIV. 6987, 1996 WL. 125661 (S.D.N.Y. Mar. 20, 1996) .........11

*Sprecher v. Graber*, 716 F.2d 968 (2d Cir. 1983) ..................................................13, 14, 15

*Sprecher v. Von Stein*, 772 F.2d 16 (2d Cir. 1985) .................................................13

*United States v. White*, 970 F.2d 328 (7th Cir. 1992) ..............................................17

*Upjohn v. United States*, 449 U.S. 383 (1981) ......................................................17

## STATE CASES

*In re Beiny*, 129 A.D.2d 126 (1st Dep't 1987) .....................................................2, 17

*Commonwealth v. Fewell*, 654 A.2d 1109 (Pa. Super. Ct. 1995) ...............................17

*State v. Smith*, 307 A.2d 73 (N.J. Super. Ct. App. Div. 1997) ..................................17

## FEDERAL STATUTES

5 U.S.C. §§ 701 et seq..............................................................................................10, 11, 12

5 U.S.C. § 702 ..............................................................................................................10

15 U.S.C. §§ 78 et seq...................................................................................................12

Fed. R. Civ. P. 12(b)(1).................................................................................................9

Fed. R. Civ. P. 12(b)(6).............................................................................................9, 10

Fed. R. Civ. P. 65 .........................................................................................................13

## OTHER

N.Y. County Lawyers' Ass'n Comm. on Prof. Ethics, Op. No. 730 (July 19,
    2002) ....................................................................................................................4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
CHRISTOPHER L. FINAZZO,                     :        08-cv-02176 (RS)
                                            :
                    Plaintiff,              :
                                            :
            v.                              :
                                            :
SECURITIES AND EXCHANGE                     :
COMMISSION,                                 :
                                            :
                    Defendant.              :
------------------------------------------------------------- x

## MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS

Plaintiff Christopher L. Finazzo ("Mr. Finazzo") respectfully submits this memorandum

of law in opposition to the motion filed by the Staff (the "Staff") of the Securities and Exchange

Commission (the "Commission"), seeking dismissal on the grounds of (i) sovereign immunity,

(ii) res judicata, and (iii) failure to state a claim.  For the reasons explained below, the Staff's

motion should be denied.

## PRELIMINARY STATEMENT

The Staff already has in its possession information it knows to have been derived from

misappropriated attorney-client privileged communications.  Currently, during the course of an

ongoing investigation, the Staff is seeking to obtain additional information, also derived from

misappropriated attorney-client privileged communications.  In the course of this investigation,

the Staff continues to communicate with specific attorneys it knows to have been complicit in the

past misappropriation of Mr. Finazzo's privileged information and who remain in improper

possession of the confidences of Mr. Finazzo.  As the victim of a misappropriation of his

personal attorney-client confidences, Mr. Finazzo is entitled to the remedy that is legally

6337201.6

mandated under such circumstances: return to the *status quo ante*. That is, Mr. Finazzo is entitled to the return, not only of all privileged material, but also of all other material that cannot be shown to have been "obtained from an independently developed, unrelated, non-privileged, unsuppressed source." In re Beiny, 129 A.D.2d 126,142 (1st Dep't 1987); see also United States v. Longo, 70 F.Supp. 2d 225, 264 (W.D.N.Y. 1999) ("Where a violation of the attorney-client privilege is demonstrated, the remedy for such a violation is the suppression of evidence *derived from* the privileged communication.") (emphasis added). Consequently, the issue before this Court is a narrow one: How, procedurally, does Mr. Finazzo enforce this universally applied remedy?

Mr. Finazzo resisted compliance with the subpoena served upon him by the Staff on grounds that the Staff is using misappropriated attorney-client confidences as its basis for the specific requests made in the subpoena. In other words, the subpoena furthers and compounds the misappropriation of Mr. Finazzo's confidential information, contrary to the requirement that Mr. Finazzo be returned to the *status quo ante*. The Staff commenced a subpoena enforcement proceeding in which it relied upon the very narrow holdings of United States v. Powell, 379 U.S. 48 (1964) and RNR Enterprises, Inc. v. SEC, 122 F.3d 93 (2d Cir. 1997), describing the very limited discretion courts have in reviewing the propriety of subpoenas. Because of the limited nature of that discretion, as found by Judge Baer, a court considering a motion to enforce a subpoena may not reach questions about the scope of the attorney-client privilege and remedies for its violation. Accordingly, Judge Baer ordered compliance with the subpoenas without reaching the privilege issues.

In spite of the extremely limited scope of Judge Baer's ruling, the Staff now contends that Judge Baer determined the issues raised here and seeks dismissal on res judicata grounds. The

Staff also asserts that this Court lacks jurisdiction to decide the privileged nature of the underlying documents, on the perplexing theory that the doctrine of "sovereign immunity" immunizes the Commission from having to litigate privilege issues.

In sum. the Staff wants it both ways.  On the one hand, it argued successfully to Judge Baer that he could not reach the privilege issues in the context of a subpoena enforcement proceeding.  On the other hand, the Staff tells this Court that Judge Baer has decided that issue already.  If accepted, the Staff's circular logic would leave Mr. Finazzo without any remedy for the misappropriation of his privileged confidences, contrary to the dictates of long established authority.

### STATEMENT OF FACTS

On August 24, 2006, when Mr. Finazzo was still employed by Aéropostale, Inc. ("Aéropostale" or "the Company"), his personal lawyer, Angela Siegel ("Attorney Siegel"), sent an email to Mr. Finazzo at his Aéropostale email address (the "Attorney Siegel Email"). Attorney Siegel, a trusts and estates lawyer, was then representing Mr. Finazzo in matters of his estate planning.  See Complaint, Exh. A ¶7.[1]  The Attorney Siegel Email was sent from an address clearly identified as belonging to an attorney:  "lawoffice@angelasiegel.com."  The closing lines indicated that it was written by "Angela Siegel, Esq., Law Office of Angela Siegel," as did the following statement:

> *****PRIVILEGE AND CONFIDENTIALITY NOTICE*****
> The information contained in this e-mail is confidential and may be protected by the attorney-client privilege and/or work product doctrine.  It is intended for the use of the named recipient only.  If you have received this communication in error, please notify the sender immediately by reply to this e-mail or by telephone.

---

[1] Unless otherwise noted, all exhibits referenced herein are attached to the accompanying Declaration of Laura Anne Reeds.

See Exh. A ¶8.  Attorney Siegel attached to her email a Word document listing Mr. Finazzo's assets, including his various business entities, that she prepared based upon confidential information given to her by Mr. Finazzo during meetings.  See Exh. A ¶9.

After August 24, 2006, while focusing on questions regarding a business trip to Las Vegas, Aéropostale's outside counsel, Katten Muchin Rosenman LLP ("KMR") and/or its agents (Kroll) found, opened, and read the confidential and privileged Attorney Siegel Email and attachment that had been sent to Mr. Finazzo.  See Exh. A ¶11.

Neither Kroll, KMR, nor Aéropostale's in-house lawyers notified Attorney Siegel that they had intercepted her privileged communication, as they were required to do under New York law.  See Exh. A ¶12 (quoting N.Y. County Lawyers' Ass'n Comm. on Prof. Ethics, Op. No. 730 (July 19, 2002).  Aéropostale then used such misappropriated confidences to terminate Mr. Finazzo, and then publicly disclosed such confidences.  See Exh. A ¶13–16.[2]

Aéropostale's counsel have steadfastly refused to return any privileged materials and documents and other information derived from such confidences.  No court has determined that the Attorney Siegel Email is not privileged.  See Exh. A ¶7–19.

---

[2] The Staff asserts that these public filings were "required by the federal securities laws."  Staff Memo. at 2.  This is misleading.  It cannot be said that Aéropostale was "required" to report information that it could only have obtained through an unlawful breach of the attorney-client privilege.  The attorneys viewing the privileged communications should never have reviewed them, passed them on, or used them as the basis for any public filings.  Rather, they were required to return such documents to Mr. Finazzo or Ms. Segal upon seeing that such documents were, on their face, privileged.  This action seeks, among other matters, a declaration that Mr. Finazzo is entitled to be placed in the position of *status quo ante*, as if his privileges was never been breached.  See Exh. A ¶42. Those disclosures also stated that the company's "historical consolidated financial statements were fairly stated in all material respects" and that the company's "historical trend of earnings would not have been materially impacted by any of these items."  See Staff Memo, Exh. 2

**The Tainted Investigation**

The Staff acknowledges that it began an informal investigation in the summer of 2007. See Memorandum of Law in Support of Motion By The Securities and Exchange Commission to Dismiss the Complaint ("Staff Memo."), at p. 4.

On August 10, 2007, Robert J. A. Zito, Esq., one of Mr. Finazzo's lawyers, informed Mr. Birnbaum of the Staff that Mr. Finazzo had a claim of privilege with respect to the Attorney Siegel Email and all information derived from the Attorney Siegel Email. See Declaration of Robert J.A. Zito ¶ 2. During this process, it is apparent that the Staff had numerous communications with KMR, during which it knowingly obtained the substance of attorney-client confidences that were misappropriated from Mr. Finazzo. What, if any, internal measures the Staff took once it learned that its investigation was based on tainted information is not presently known and will be a focus of discovery from KMR and Aéropostale's other attorneys.

On January 10, 2008, the Commission issued a Formal Order of Investigation relating to Aéropostale, undoubtedly based on tainted information but without notice to the Commission of such taint. See Exh. A ¶20. Again, the extent of such taint will be the subject for discovery.

On January 16, 2008, the Staff issued a subpoena for the production of documents related to the information and entities set forth in the Attorney Siegel Email. Mr. Zito immediately notified Aéropostale and KMR that Mr. Finazzo had received a subpoena and advised them that all privileged information or information derived from the privileged communications "are either protected under the attorney-client privilege and/or the attorney work product doctrine and/or contain information that is derived from privileged sources," and that therefore no documents should be produced. See Exh. A ¶21. Upon information and belief, the Staff has also subpoenaed Aéropostale, and Aéropostale has provided information, privileged documents or

documents derived from privileged sources, the extent of which will be identified during discovery.

On January 17, 2008, Mr. Zito notified the Staff by email that Aéropostale's lawyers were in possession of misappropriated confidences of Mr. Finazzo and objected to the Staff having communications with KMR. See Exh. A to the Declaration of Robert J.A. Zito.

## The Subpoena Enforcement Proceeding

On February 27, 2008, the Staff filed an application for an order to show cause and for an order requiring obedience to its subpoenas. See Memorandum of Law in Support of Securities and Exchange Commission's Application for an Order to Show Cause and for an Order Requiring Obedience to Subpoenas (the "Subpoena Memo"), Exh. B. In the Subpoena Memo, the Staff took the position that (1) the inquiry is being conducted for a legitimate purpose within the Commission's authority; (2) the information sought is relevant to that purpose; (3) the information is not within the Commission's possession, and (4) the subpoenas were issued in accordance with the requisite administrative procedures. See Exh. B, p. 10 (citing Powell, 379 U.S. at 57–58).

In its Subpoena Memo, the Staff argued repeatedly that:

- "Finazzo's allegations that Aéropostale interfered with his attorney-client privilege have no bearing on Finazzo's obligation to comply with the Commission subpoena issued to him;"

Exh. B, p. 3, and

- the claim that Aéropostale "allegedly acted improperly in reviewing and possibly utilizing a document Finazzo claims was privileged" was "[s]imply put, . . . not a

legitimate basis to refuse to comply with a properly issued and served

administrative subpoena"

Exh. B, p. 13.

The Staff again emphasized this point several times at oral argument before Judge Baer.

Mr. Paul Gizzi of the Staff specifically represented to Judge Baer the Staff's view that it need not

address the privilege issue:

> And your honor has correctly stated the standard for enforcement of a subpoena.
> There is no serious dispute that the Commission meets that standard. Information
> that a New York Stock Exchange listed company files publicly, discloses
> publicly, indicating that one of its top officials had undisclosed relationships with
> entities that supplied product to that company, it's appropriate for the
> Commission to investigate. We've subpoenaed Mr. Finazzo [and] South Bay.
> They've refused to comply. *All the court needs to do is to determine whether the
> Commission is within its authority to investigate, and the court can enforce the
> subpoenas today.*

Staff Memo, Exh. 4, p. 22 (emphasis added).

Mr. Gizzi continued:

> THE COURT: Doesn't [Mr. Finazzo] have a right to . . . look behind this and see
> whether or not this is really illegal or fruits of some illegal search?

> MR. GIZZI: I don't think so, Your Honor. I think it would be nothing more than
> a fishing expedition.

Staff Memo, Exh. 4, p. 24.

**<u>Judge Baer's Opinion</u>**

On March 16, 2008, Judge Baer granted the Subpoena Motion, on the grounds urged by

the Staff, that the issue of privilege could not be reached by a court in the context of a subpoena

enforcement proceeding.

Judge Baer's opinion specifically held: "[t]he courts' role in a proceeding to enforce an

administrative subpoena is extremely limited." Baer Opinion at 3, citing <u>RNR Enters.</u>, 122 F.3d

at 96.  Judge Baer then explained that once the Staff made a prima facie case as to its basis to

issue the subpoena, the burden shifted to Mr. Finazzo to demonstrate that the subpoena was

"unreasonable," that it was issued in bad faith or for an "improper purpose," or that compliance

with the subpoena would be "unnecessarily burdensome."  According to Judge Baer, Mr.

Finazzo's claim regarding misappropriation of his attorney-client confidences falls outside these

limited categories.  Baer Opinion at 3, citing RNR Enters., 122 F.3d at 97.

Judge Baer held that, "[g]iven the courts' 'extremely limited role' in proceedings to

enforce administrative subpoenas and the burden borne by Finazzo, . . . Finazzo has not shown

that the Finazzo or South Bay subpoenas were issued in bad faith or for an improper purpose."

Id.  In declining to rule on Mr. Finazzo's claim that "alleged violations of attorney-client

privilege 'tainted' the Commission's investigation," Judge Baer specifically observed that this

issue was "the gravaman of Finazzo's declaratory action before Judge Sullivan," suggesting that

such issues could be dealt with in this proceeding.  Baer Opinion at 4, n.1.

In short, Judge Baer never determined whether the Staff's investigation was tainted due

to the misappropriation of the attorney-client privilege or any of the related issues that are before

this Court.

Judge Baer's order is presently on appeal before the Second Circuit.  In connection with

Mr. Finazzo's stay motion, in oral argument on May 6, 2008, Circuit Judge Hall stated:

> [T]he process will work something as follows:  your client will, if
> ordered, respond to the subpoena, of course, or face whatever
> sanctions may be available, but included with that, around
> documents for which a privilege is claimed, will be submitted a
> privilege log, as is done in every other response to every other
> discovery subpoena, at least that I am aware of, and then, the fight

over what is privileged will occur around the subpoena log, excuse
me, the privilege log, given in part in response to the subpoena.[3]

In anticipation that Judge Baer might rule as he did, Mr. Finazzo filed this action for

declaratory and injunctive relief. Only through this action and discovery can Mr. Finazzo

identify documents to which he claims a privilege, or a derivative privilege, as articulated by

Circuit Judge Hall.

## ARGUMENT

### THE COURT HAS SUBJECT MATTER JURISDICTION
### AND THE DOCTRINE OF RES JUDICATA IS INAPPLICABLE

The Staff moves to dismiss the Complaint for lack of subject matter jurisdiction and on

the ground of res judicata, pursuant to Fed. R. Civ. P. 12(b)(1) and (6). The Staff asserts that the

Commission cannot be "sued" because of the doctrine of sovereign immunity and that, in any

event, Judge Baer has purportedly already adjudicated Mr. Finazzo's claims in the prior

subpoena enforcement proceeding.

A case is dismissed for lack of subject matter jurisdiction only "when the district court

lacks the statutory or constitutional power to adjudicate it. Makarova v. United States, 201 F.3d

110, 113 (2d Cir. 2000) (citations omitted). A motion to dismiss pursuant to Fed. R. Civ. P.

12(b)(6) "test[s], in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a

claim for relief without resolving a contest regarding its substantive merits." Global Network

Commc'ns, Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir. 2006). On such a motion, the

court "assesses the legal feasibility of the complaint, but does not weigh the evidence that might

be offered to support it." Id. (citing AmBase Corp. v. City Investing Co. Liquidating Trust, 326

F.3d 63, 72 (2d Cir. 2003)). The Court accepts the factual allegations set forth in the complaint

---

[3] There is no official transcript of the oral argument. The quoted portion was transcribed by Carter Ledyard &
Milburn LLP from a tape recording provided by the Clerk's Office of the Second Circuit.

as true, and draws all reasonable inferences in favor of the plaintiff.  See Cleveland v. Caplaw

Enters., 448 F.3d 518, 521 (2d Cir. 2006).

The Staff's motion to dismiss must be denied because its "sovereign immunity" argument

and its virtually identical "collateral estoppel" argument are both based on a fundamental

mischaracterization of this action and the law.  The Staff's position is wholly without merit, if

not disingenuous.  By this action, Mr. Finazzo seeks to (i) protect his confidences and other

privileged information, (ii) identify those documents and other items of information in the

possession of third parties against which he asserts a privilege, (iii) restore his rights *status quo*

*ante* and prior to the misappropriation of his confidences and other privileged information and,

(iv) prevent the Staff from using such misappropriated privileged information and information

derived from such misappropriated privileged information.  These substantive issues were simply

not reached during the "extremely limited" review undertaken by Judge Baer.  Mr. Finazzo's

overall action is also properly pleaded and clearly survives the threshold requirements of Fed. R.

Civ. P. 12(b)(6).  Mr. Finazzo is entitled to designate those materials against which he may assert

a privilege, and to prevent the use of such privileged information.

## A.    Sovereign Immunity Does Not Bar Mr. Finazzo's claims

The Administrative Procedure Act, 5 U.S.C. §§ 701 et seq. ("APA"), mandates that "[a]

person suffering legal wrong because of agency action, or adversely affected or aggrieved by

agency action . . . is entitled to judicial review thereof." 5 U.S.C. § 702.  The Supreme Court has

acknowledged that "§ 702 [of the APA] was intended to broaden the avenues for judicial review

of agency action by eliminating the defense of sovereign immunity."  Bowen v. Massachusetts,

487 F.3d 879, 891–92 (1988).  Indeed, in Gordon v. New York Stock Exchange, Inc., 422 U.S.

659, 690 n.15 (1975), the Supreme Court specifically stated that "[j]udicial review of SEC action

is available under the Administrative Procedure Act." Simply put, the Commission is not immune to suit here, and this Court has proper jurisdiction. See Bowen, 487 U.S. at 891 n.16. ("[I]t is common ground that if review is proper under the APA, the District Court ha[s] jurisdiction under 28 U.S.C. § 1331.").

The use of misappropriated confidences that are protected by the attorney-client privilege is, *prima facie*, the type of agency action that the APA is intended to protect. Indeed, the Staff routinely litigates the scope and extent of various privileges in the district courts. See, e.g., SEC v. Beacon Hill Asset Mgmt. LLC, No. 02 Civ. 8855, 2004 WL 2059702 (S.D.N.Y. Sept. 14, 2004); SEC v. R.J. Reynolds Tobacco Holdings, Inc., No. MISC. A. 03-1651, 2004 WL 3168281 (D.D.C. June 29, 2004); SEC v. Herman, No. 00 Civ. 5575, 2004 WL 964104 (S.D.N.Y. May 5, 2004); SEC v. Thrasher, No. 92 CIV. 6987, 1996 WL 125661 (S.D.N.Y. Mar. 20, 1996); SEC v. Falbo, No. 92 CIV. 6836, 1996 WL 193816 (S.D.N.Y. Jan. 25, 1996); SEC v. O'Brien, Misc. No. 91-145, 1992 WL 358831 (D.D.C. Aug. 26, 1992); SEC v. Kingsley, 510 F.Supp. 561 (D.D.C. 1981); SEC v. Texas Int'l Airlines, Inc., 1979 WL 184774 (D.D.C. Aug. 3, 1979).

The Staff asserts that because it has been granted discretion by the Securities Exchange Act of 1934 (the "Exchange Act") to initiate investigations and to issue subpoenas, such actions fall under an exception to the APA's waiver of sovereign immunity under 5 U.S.C. § 701(a)(2) for instances of "agency action committed to agency discretion by law." Staff Memo, p. 9. To this end, the Staff mischaracterizes the relief sought in this action as an attempt to "interfere" with their investigation.

Mr. Finazzo is not challenging the Staff's right to initiate investigations and issue subpoenas under the Exchange Act. However, in conducting such investigations, the Staff

cannot knowingly use documents or other information that are privileged or derived from privileged sources. No case supports such a contrary proposition.[4]

The exception to the waiver of immunity embodied in 5 U.S.C. § 701(a)(2) is "very narrow" and applies only "in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 410 (1971); Buntrock v. SEC, No. 02 C 1274, 2003 WL 260681 (N.D. Ill. Feb. 6, 2003). Such is not the case here. While the Exchange Act provides the Staff with discretion to initiate investigations and issue subpoenas, nowhere does it provide the Staff with discretion to violate the attorney-client privilege. See 15 U.S.C. § 78 et seq. To the contrary, it is clear that the "law to apply" in cases of breach of the attorney-client privilege requires, at the very least, that all materials stemming directly or indirectly from such breach be returned to the aggrieved party in an effort to make that party whole again, and that no further use of those materials be permitted. See, e.g. Longo, 70 F.Supp. 2d at 264 (citing SEC v. Forma, 177 F.R.D. 516 (S.D.N.Y. 1987)); United States v. Lin Lyn Trading, Ltd., 925 F. Supp. 1507, 1517 (D. Utah 1996) aff'd in part, rev'd in part, 149 F. 3d 1112 (10th Cir 1998).

After successfully arguing with force to Judge Baer that he could not reach the privilege issue, the Staff argues to this Court that Mr. Finazzo is procedurally and substantively restricted to the "extremely limited" review set out in RNR Enterprises. In other words, according to the

---

[4] The cases cited by the Staff in support of this notion, United States v. Bonnell, 483 F.Supp. 1070 (D. Minn. 1979) and SEC v. OKC Corp., 474 F.Supp. 1031 (N.D. Tex. 1979), are distinguishable from the instant case because there the SEC had no knowledge of the privileged nature of the documents at issue. Moreover, those cases were specifically limited to attorney-work product and did not involve the attorney-client privilege. Federal agencies cannot knowingly use privileged information in connection with investigations. See generally, e.g., In re Grand Jury Proceeding, No. 01-6079, 01-6222, 2003 WL 22469714 (2d Cir. Oct. 31, 1002); In re Motion to Quash Grand Jury Subpoena, No. 06-CV-6401, 2006 WL 2385415 (W.D.N.Y. Aug. 16, 2006); In re Grand Jury Subpoena to Rees, No. M-8-85, 2006 WL 1559286 (S.D.N.Y. June 7, 2006); In re Grand Jury Subpoenas Dated March 24, 2003, 265 F.Supp.2d 321 (S.D.N.Y. 2003).

Staff, Mr. Finazzo has no right to protect his privilege and no right to remedy the misappropriation of his confidences.

Under normal circumstances, as noted by Circuit Judge Hall, a subpoenaed party who is in possession of privileged documents would withhold such documents under claim of privilege and would list such documents on a privilege log. It would then be incumbent upon the Staff to commence a proceeding to enforce the subpoena as a procedural vehicle to test the assertion of the privilege. Here, however, the privileged documents are in the possession of third parties. Procedurally, Mr. Finazzo has only two alternatives. He could commence an action for declaratory judgment, such as the one before this Court. Alternatively, he could intervene in a subpoena enforcement proceeding that is commenced against third parties in possession of such privileged information such as Aéropostale, KMR, Kroll or Deloitte.[5] Insofar as no such subpoena enforcement action has been commenced against KMR, Kroll or Deloitte, Mr. Finazzo has only one procedural alternative: this action for declaratory and injunctive relief under Fed. R. Civ. P. 65.

The Staff cites to Sprecher v. Graber, 716 F.2d 968 (2d Cir. 1983) and Sprecher v. Von Stein, 772 F.2d 16 (2d Cir. 1985), in support of the proposition that the Commission is immune from declaratory judgment actions relating to privilege. However, both such cases are distinguishable and, indeed, demonstrate why Mr. Finazzo's action is properly pleaded here. In those cases, the plaintiff brought a claim against the Commission asserting that the investigations were being conducted for an "improper purpose" in that they were "improperly motivated by religious bias and a desire to harass." Graber, 716 F.2d at 971. The Second Circuit found that the exclusive method for testing the validity of the subpoenas on the basis of those allegations

---

[5] In connection with Mr. Finazzo's separation from Aéropostale, Aéropostale agreed to keep such information confidential.

was a contested subpoena enforcement proceeding, in which the court would make findings as to the Commission's motives. See Graber, 716 F.2d at 974–75.

Unlike the Sprecher cases, Mr. Finazzo is not claiming that the subpoenas were issued in bad faith or for an improper purpose. He is simply claiming that the Staff may not use privileged information or information derived from such privileged information in connection with its investigation.

**B.      The Doctrines of Res Judicata and Collateral Estoppel are Inapplicable to the Claims Before This Court**

Remarkably, the Staff next asserts that the issues in this action were fully litigated in the subpoena enforcement proceeding and therefore are now barred "whether by claim preclusion or issue preclusion." Staff Memo, p. 12.

As a matter of hornbook law, parties are barred from bringing claims identical to claims that were brought *and decided* in earlier proceedings between those parties. See, e.g., Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A., 56 F.3d 359, 366 (2d Cir. 1995). Under the doctrine of issue preclusion, parties are barred from re-litigating issues that were actually or necessarily decided in earlier proceedings between those parties. See id. at 368.

As previously noted, Mr. Finazzo is not seeking to prevent the Staff from conducting an investigation or issuing subpoenas, but to prevent the use of materials protected by his attorney-client privilege in connection with such investigation or subpoenas. As such, the issues presently before this Court include (1) whether the email sent to Mr. Finazzo at work was a privileged attorney-client communication; (2) whether Aéropostale's attorneys violated their ethical obligations by reviewing and disclosing the communication and its contents; (3) whether any documents that quote from or summarize the privileged email are themselves privileged; and (4)

whether the Staff can use information obtained directly or indirectly from privileged sources in its investigation.  See Exh. A ¶ 40.

These claims are not at all "identical" to those litigated in the subpoena enforcement proceeding.  As noted, in his ruling Judge Baer addressed only three narrowly circumscribed questions:  (1) whether the investigation was for a legitimate purpose; (2) whether the subpoena was properly issued; and (3) whether the subpoena sought relevant information not already possessed by the Staff.  Exh. C, p. 3–4.  In fact, Judge Baer made it clear that he "need not decide" issues related to the violation of Mr. Finazzo's attorney-client privilege.  Exh. C, p. 6.  Thus, Judge Baer did not and could not, as urged by the Staff, make any determination as to those issues in rendering his judgment, much less a determination that was "essential to that judgment."  Cf. Staff Memo, p. 12 (quoting Central Hudson, 56 F.3d at 368).

In Sprecher v. Graber, the case cited by the Staff on the issue of sovereign immunity, actually supports the proposition that claims raised in a declaratory judgment action may be distinct from those raised in an enforcement proceeding.  There, the court ruled that the previously litigated subpoena enforcement action "does not have a preclusive effect" as to three counts in the subsequent action "since Sprecher's opportunity to litigate the pertinent issues in the earlier proceeding was considerably narrower than the opportunity available in a plenary civil action."  Graber, 716 F.2d at 972.

Notably, too, in the Graber case, the Second Circuit dismissed one count of the complaint as estopped where the plaintiff asserted that the subpoena compelled production of attorney-client privileged documents, but only because that specific claim was "the substantial equivalent of that which would be available in a plenary action."  716 F.2d at 972.  The Court relied on the fact that discovery in that case was "unnecessary since the client and Sprecher had the relevant

information at their disposal." Id. at 973. In contrast, here, Mr. Finazzo does not possess any of the relevant information, discovery is necessary to the adjudication of this action, and Mr. Finazzo did not have an opportunity to litigate the merits in the prior action, again, as urged by the Staff.

In sum, Mr. Finazzo has not previously litigated the issues presented here, and therefore is not estoped from pursuing this action.

## C.    Mr. Finazzo has Sufficiently Pled a Claim for Relief

The Staff can only assert that Mr. Finazzo "cannot prevail" on his claims by, again, mischaracterizing the relief sought by Mr. Finazzo as a blanket injunction of the Staff's investigation. See Staff Memo, p. 14. Again, Mr. Finazzo seeks no such relief; he seeks only to prevent the Staff from continuing to use misappropriated confidences and information wrongfully obtained in violation of his attorney-client privilege. See Exh. A, p. 12–13, Ad Damnum clauses F. The distinction is critical. Mr. Finazzo is not claiming here that the Staff has engaged in an improper investigation – a claim that, as the first of the four factors in the Powell and RNR Enterprises cases, was properly raised in the subpoena enforcement action. If Mr. Finazzo were to prevail, the Staff could continue its investigation, and continue to issue subpoenas, but without relying on information derived from privileged sources.

The Staff attempts to distance itself from the egregious ethical misconduct of Aéropostale's attorneys with the statement that it "comes to this investigation with clean hands." Staff Memo, p. 15. Even giving the Staff the benefit of the doubt that it had no role in Aéropostale's initial investigation, which remains to be seen, or the improper disclosure of privileged information in the company's public filings, the Staff cannot deny that it has known, at least since August 10, 2007, that the information it is acting upon is sourced in

misappropriated confidences protected by the attorney-client privilege. Despite such notice, the Staff has continued to obtain information sourced from privileged information, and has continued to communicate with KMR – a firm that is thoroughly tainted by wrongful possession of misappropriated confidences – and to gather information from that firm.[6] As noted above, the attorney-client privilege protects communications from disclosure and makes them inadmissible as evidence; this protection extends not only to the privileged documents themselves, but to all documents and other evidence that cannot be shown to have been "obtained from an independently developed, unrelated, non-privileged, unsuppressed source." Beiny, 129 A.D.2d at 142; see also Longo, 70 F.Supp. 2d at 264. Since the Staff has been on notice that the information it possesses and is continuing to gather was derived from privileged sources, it is entirely appropriate, if not urgent, for Mr. Finazzo to now seek protection from this Court against any further wrongful dissemination of privileged information.

Despite the Staff's claim that there is no support for what it ridicules as Mr. Finazzo's "extraordinary proposition," Staff Memo, p. 14, several cases provide a roadmap for the relief now being sought. For instance, in Lin Lyn Trading, Ltd., customs agents seized handwritten notes on a yellow notepad prepared by defendant Thomas for discussions with his attorneys in connection with an ongoing investigation of his company, Lin Lyn Trading. 149 F. 3d 1112 (10th Cir 1998). Even after Thomas informed the agents of their confidential nature, the agents

---

[6] Thus, this case is distinguishable from those cited by the Staff, see Staff Memo, p. 17, n.13, where, to the extent the courts found that a privilege had even been violated, the government could rightly claim to have had no involvement whatsoever in the procurement of the privileged material. See Commonwealth v. Fewell, 654 A.2d 1109 (Pa. Super. Ct. 1995) ("Appellant does not allege, nor can she allege, that she was subject to any police or government misconduct."); State v. Smith, 307 A.2d 73, 80 (N.J. Super. Ct. App. Div. 1997) (noting that "it is undisputed that the police were blameless"); United States v. White, 970 F.2d 328, 333 (7th Cir. 1992) (holding that "even if a violation occurred, the government was not complicit in that violation"). Fewell and Smith also involve the psychiatric-patient privilege which is far less recognized as the attorney-client privilege at issue here. See Upjohn v. United States, 449 U.S. 383, 389 (1981) (describing the historical roots of the attorney-client privilege).

continued to hold it. Id. The Tenth Circuit held that "suppression of all evidence obtained after [the date the notes were seized]" was "an adequate remedy," and explained:

> [T]here is nothing to forbid the government from beginning a new investigation, using the evidence legitimately acquired prior to [the date the notes were seized], and conducted by personnel – both investigatory and prosecutorial – untouched by the taint of the yellow notepad. If the government is able to prosecute its case by presenting untainted evidence derived from legally acquired materials, then it should be allowed to do so . . . ."

Id. at 1118. As in the case here, the government in Lin Lyn Trading had notice that the documents in its possession contained privileged information, and should have taken measures to remove the "taint" before proceeding with its investigation. Mr. Finazzo seeks the same relief here – assurance that the Staff is proceeding in its investigation without direct or indirect reliance on any tainted information – and return to the *status quo ante*.

SEC v. Forma is similarly instructive. In Forma, the defendant, John Forma, the subject of a Commission enforcement action, sought to suppress all evidence that flowed from the Staff's deposition of his former personal attorney. 117 F.R.D. 516. The Staff there, as it does here, argued that the deposition was proper because it had engaged in no wrongdoing. Id. The court disagreed, observing that "the remedy of suppression could be appropriate." Id. at 523. Perhaps more importantly, the court stated that once the Staff was on notice of a possible breach of the attorney-client privilege, it should have halted its investigation:

> [I]t is possible for an agency to breach the attorney-client privilege and then secure a ruling validating its action. However, this course has two pitfalls. First, if the agency is wrong and the violation of the privilege is found to have been improper, the agency risks suppression of all evidence attributable to the breach, not merely the direct testimony of the attorney. Second, the need for collateral litigation expends resources and delays resolution of the case.
>
> Two alternative courses would avoid these problems. The agency can, of course, seek judicial approval before seeking to breach the attorney-client privilege. A less onerous safeguard would be to instruct the client to obtain advice of an

attorney not under investigation before waiving the privilege. Any claim that the waiver had been obtained through improper pressure would then be precluded.

Id. at 526–27 (internal citations omitted).[7] Following the same procedure here, once the Staff had notice that it possessed information derived from a violation of the attorney-client privilege, it should have halted its investigation and sought a judicial determination. But for reasons that have not been explained, it has not done so.

In OKC Corp. v. Williams, 614 F.2d 58 (5th Cir. 1980), the Fifth Circuit recounted that OKC Corp. had hired outside counsel to conduct an internal investigation, in connection which there was misappropriated privileged information. Significantly, the SEC agreed to hold up its investigation pending decision by the district court concerning the report. Id.

---

[7] Notably, the Lin Lyn Trading and Forma cases involved instances where attorney-client communications were divulged, rather than a work-product privileged document. These cases – and the instant case – are distinguishable from Bonnell, 483 F.Supp. 1070 and SEC v. OKC Corp., 474 F.Supp. 103, relied on by the Staff, see Staff Memo, p. 18–19, which involved the possession of a work-product document rather than attorney-client communications. In Bonnell – in what the Staff minimizes as a "passing reference," Staff Memo, p. 18, n.14 – the court explicitly stated that its decision might well have been different had the case involved attorney-client communications. 483 F.Supp. at 1079, n.17 ("There is, however, less reason to bar the use of fruits of a violation of the work-product doctrine than to preclude exploitation of illegally seized evidence or privileged attorney-client communications.").

**CONCLUSION**

For all the foregoing reasons, the Staff's motion to dismiss should be denied.


Dated: New York, New York
       June 13, 2008


                            CARTER LEDYARD & MILBURN LLP

                    By:   _____
                              Robert J.A. Zito
                              Two Wall Street
                              New York, New York 10005-2072
                              Tel. (212) 732-3200
                              Fax: (212) 732-3232
                              *Attorneys for Plaintiff Christopher L. Finazzo*


*Of Counsel:*
Alan S. Lewis
Kenneth S. Levine
Laura A. Reeds